He was convicted on three separate counts, I guess. Yes, Your Honor. And he's only appealing one of the convictions. That's correct, Your Honor. Is there some reason that he can't appeal the entire conviction? I mean, did he single one count? Yes, Your Honor, there is. This was a foreign seafarer who came to the United States on a foreign flag vessel. Does this have far-reaching consequences after the conviction? No. What about this particular count? Potentially, Your Honor, but he served his probationary sentence and has returned to Greece. But this is an appeal that seeks this court's intervention to right a wrong, both as a matter of fact and black-letter law and regulation. In this case, Mr. Fafalios— Appeal is a matter of principle, then. Well, it's more than that. Does that have any consequences? It has consequences for his ability to continue to remain employed as a seafarer. It does have that consequence. Yes, it does, Your Honor. And the other convictions did not have that same consequence? As we're advised, no. So this is an appeal by Mr. Fafalios on the basis that Judge Duval didn't properly grant his motion for judgment of acquittal, both at the end of the government's evidentiary presentation and at the close of trial. In this case— I wouldn't spend too much time on that. Lack of evidence is lack of evidence. Well, it's agreed in this case. The government agrees they did not offer any evidence that Mr. Fafalios was either the master or person in charge of the vessel. Why is that important? Because here the regulations found at 33 CFR 15125 are the basis of the recordkeeping requirements that bring us to this courtroom. Now, the law and the regulations say that the person who's obliged to maintain an accurate oil record book while in U.S. waters is the master or other person in charge of the ship. Now, what's—or other person in charge of the ship? What if the master conks out, has a heart attack while he's underway? So he wouldn't be the captain necessarily. He might be the chief mate. He might be somebody else who takes over that role. But here the legal obligation to maintain this record book while in U.S. waters falls on the master or, in his absence, someone who takes his place. Fafalios was the chief engineer. Now, this is a question of first impression for this court. That's what I was going to ask. It's not covered by the Joe case? Well, it is, Your Honor, if you look to the footnote. Footnote 1 of the Fifth Circuit opinion, it recognizes Judge Hartfield's commentary that the chief engineer is not even the right person. He's not the right class of people to be tasked legally with maintaining the accurate oil record book. But when the Fifth Circuit looked at Joe— Well, what they're saying is aiding and abetting. He was charged with aiding and abetting, so we don't need to— But in this case, the government elected not to charge him with aiding and abetting under 18 U.S.C. 2. So when the government brought their indictment, they knew about Judge Hartfield's decision. They knew about the Fifth Circuit's decision. They knew about footnote number 1 in the Fifth Circuit decision where they said even though the decision in the district court in Beaumont found that the chief engineer doesn't meet the regulation, doesn't meet the requirement of the regulation, the Fifth Circuit didn't need to address it at that time. And it goes on to say that even though he might be right, we don't need to address it at this point in time. It was a specific language. Now, even though this is a question of first impression, the court doesn't need to reinvent the wheel because, again, although a thin body of case law on the APS and their implementing regulations, it's pretty clear. And I'll cite to the court three decisions, and I'll walk through it very briefly to show why they're relevant and where this court can find cornerstone and guideposts to coming to overturning the appeal on the APS conviction and overturning the conviction on appeal of the APS conviction in this case. The Third Circuit in 2006 looked at the issue in U.S. v. Abregar, and the Third Circuit told us that the substantive regulation requiring the proper maintenance of an oil record book is found in 33 CFR 151.25. It talks about the section of the regulation generically. It doesn't go to the specific sections. We say here 151J is the section that requires the master or other person in charge of the ship to maintain the record book. But it's important because the Third Circuit lays out the framework that says that not every MARPOL international treaty violation is a U.S. crime. And it says that even if there was a dumping out at sea, that doesn't make it a U.S. crime. Even if there was a cover-up and there was a false entries into an oil record book at sea, it's not a U.S. crime. And it's set out clearly in Abregar. What they say is that the crime of conviction, the offense of conviction, is the failure to maintain an accurate oil record book while in U.S. waters. And that's consistent with the statute in the regs. Because what they say is that the obligation is while in U.S. waters or at a port or other facility under U.S. jurisdiction. What does that mean? At one time the Panama Canal was under U.S. jurisdiction. That's what he was charged with, failure to maintain an oil record book in which all disposals were fully recorded. That's correct, Judge Jones. But remember, Abregar was a plea deal. So this question never came up. But the scope of APS and its implementing regulations was squarely addressed in Abregar. Well, what I'm saying is he was indicted, Fafalios was indicted for did knowingly fail to maintain an oil record book. Right. And what we're saying… The argument is he had no obligation to do it. That's correct. And he had no obligation to maintain it while in U.S. waters. That's the important limitation here. So even if it was falsified outside of U.S. waters under Abregar, that's not a U.S. crime. Even if he directed discharging over the side into the sea outside of U.S. waters, that's not the crime. Acknowledge that he discharged the oil and water, the refuge into international waters. I don't think we acknowledged it, Judge. I think the evidence that the government put on was that he knew about it or directed it. We don't challenge that he discharged the water, discharged the refuge in international waters. No, he accepted the jury's verdict. That's not on appeal here. What we're challenging is very narrow… He did not record it, and he was obligated to record it. And the question is whether that's a violation of United States law. And if it were a continuing offense, it would be. But it's not a continuing offense. It's your—that that occurred in international waters. And the only continuing offense is the failure to maintain the books. And he had no responsibility to maintain the books. That was the master of the vessel. That's correct, Your Honor. Of which nobody contends he was. That's correct, Your Honor. The government does contend he had the obligation to do it, but not as master of the vessel. Well, the government says that he made notations in the book. And the government contends others made notations in the book. And what we argue is, well, we agree that there was one entry made by Mr. Fafalios, but that wasn't made in U.S. waters. And it wasn't his obligation to maintain the oil record book in U.S. waters. And while there may be many other ways that the government could have charged him, including but certainly not limited to aiding and abetting, they elected not to charge him in those ways. They did charge him with obstruction, and perhaps they could have put another overt act in the obstruction count. But they didn't. And so what we're saying here is that the MARPOL or the APPS count that was brought should have been dismissed by the district court because the government failed to deduce any evidence, and they concede on appeal that they didn't even try to offer any evidence, that Mr. Fafalios was the master or other person in charge of the ship. So really you're saying there are two bases on which there's insufficient evidence. One is his status not being master, and the other is no obligation to maintain in U.S. or he did not in fact fail to maintain in U.S. waters. That's correct, Your Honor. And I point the court to footnote number three in the ABRGAR decision. And there the Third Circuit's looking at the analytical significance of the implementing regulations, 33 CFR 151.25. And they say that the APPS provisions and regulations do not merely implicate jurisdiction. They are worded in such a way as to define for purposes of U.S. law the scope within which MARPOL violations constitute crimes at all. So it's impossible for the court to overlook 151J where it makes it clear that the master or other person having charge of the ship is the person required to keep an oil record book. The actual language is the master or other person having charge of a ship required to keep an oil record book shall be responsible for the maintenance of such record. Now, as I started before, this court doesn't need to reinvent the wheel. The question here is maintain and maintenance. ABRGAR looked at it. Judge Arden up in the District Court of Connecticut looked at it. And the Second Circuit Court of Appeals looked at it in an opinion they issued in 2009, U.S. v. Ionia. And there it's been set out very clearly that the crime of conviction is the failure to maintain. Maintenance, of course, is the present perfect tense of maintain. Maintain maintenance. So you have to look to the regulations, which analytically significant regulations, the only regulations that dictate who must prepare the oil record book, when it must be maintained, and who must maintain it. And that's the master or other person in charge of the ship. Does anybody contend that he was in charge of the ship? No. Nobody does. It's agreed between the— He is neither master nor the other person having charge of the ship. That's correct, Judge. Only those are the two that are required to keep the oil record book. That's correct. And he is charged with failing to keep the oil record book, which was not his duty and for which he had no obligation and consequently didn't violate 151.25 of the regulations. That's correct. Now, the government argues that— That's your case, isn't it? Yeah, that's our case. That's right. And it's consistent, Your Honor, if you were to look to—the government cited 1908A, which comes under the section, the penalties for violations. And the government says, well, 1908A says any person who violates the statute or the treaty would be subject to a Class D felony, right? And they say, well, when we say any person, we mean every person. But that's easily disposed of by our regard because not every violation of MARPL is a crime and certainly not a U.S. crime. And so we say, but wait a minute. That doesn't get off the ground. But even if you were to look a little deeper in that same section, 1908, we point out sections D and E. Starting with E, this is a very important section for the Coast Guard because the way they prosecute these cases is they revoke the vessel's departure clearance. And you'll find the authority under 1908E. And so the Coast Guard can only have the departure clearance revoked under two circumstances. That a ship in REM, its owner, operator, or person in charge is liable for a fine or penalty. It's a fate complete. It's already been decided. Or if reasonable cause exists to believe that the ship, its owner, operator, or person in charge may be subject to a fine or civil penalty. It doesn't go beyond the organizations that own and operate the ship or the person in charge. Turning back to section D, that's the liability in REM. That's the ship itself. So if the companies go bust, there's still a right to enforce the penalty or fine that may be imposed. Just arrest the ship. Or you take a judgment from this court and you go have it recognized somewhere else abroad. Now, just a final point, if I may. The government says, well, but we really mean to honor our treaty obligations to our partners. And it's a policy argument, but it's a policy argument based on weakness of their argument under the law. Because in the Royal Caribbean case from the Southern District of Florida back in 1998, the Royal Caribbean argued, wait a minute, you have to look to the UNCLOS, the United Nations Convention on the Law and the Scene. You've got to look to international law. And we argue that MARPOL prescribes the universe of penalties that we could be subject to, and that's just fine. That's just money. Nothing beyond that. And the government stood up and argued, no, the MARPOL treaty is not self-executing, and a defendant has no standing to rely on the international treaty. Instead, you have to look to the implementing regulations of the Act to Prevent Pollution from Ships. The Act to Prevent Pollution from Ships is the U.S. codification of our version of the treaty. And you have to look, that's the skeleton, but the meat and the flesh is found in the regs. And if you were to look at the regs and you give a plain meaning to 151.25J, Fafalios is not the master or person in charge of the ship and cannot legally be found liable for the failure to maintain the oil record book while in U.S. waters. Okay, Mr. Chair. Is it pronounced Chaios? Chaios, yes, sir. Chaios. I think there was a typo. They spelled my name C-H-A-I-O-S, but it's actually C-H-A-L-O-S. Thank you, Mr. Chaios. Thank you, Your Honor. Okay, Mr. DeMasio, we'll hear from you. Good morning, Your Honors. The Department of Justice. Yes, Nicholas DeMasio on behalf of the United States, and may it please the Court. The Coast Guard has been prosecuting chief engineers for falsifying oil record books for decades, and the defendant in this case, in fact, knew that is how the Coast Guard applies its regulations, and he went to great lengths to try to cover up his actions. Well, how often do they prosecute for falsifying records in international waters? Well, Your Honor, that is not the theory on which we proceeded in this case. Well, excuse me, sir, but what the theory was that he failed to maintain under 125, but that's what you alleged in the indictment, but then you cited 125H, which is failing to sign the record of a completed operation discharge, which the regulation requires be done contemporaneously with the discharge. So thank you for clarifying that, Your Honor. Let me clarify how the government views the indictment to work in this case, and that is what the government charged was a violation of subsections A, D, and H. And so our position, as we've laid out in our brief, is that subsection A of the regulation places this maintenance duty on the ship as a whole, and the other provisions of the regulation then flesh out how is the ship to fulfill this maintenance duty, which your court has affirmed in Joe that that maintenance duty is an ongoing obligation. It doesn't end when the ship comes into the United States. These obligations to fully and accurately record each entry in the book follows the defendant into United States territory, and so if the defendant— That's not necessarily so. I mean, in other words, the failure to maintain does. Correct. But, I mean, the act of having actually discharged the pollutant into the water does not necessarily follow. Right, and what we're saying is that as the person in charge of the operations— Right, who's in charge of the maintenance of the books. You know, you're saying that the offense is the failure, whenever he enters United States waters and the books or the records are not accurately maintained, a violation automatically occurs of United States law when he enters United States waters. What we're saying is that when the defendant entered into United States waters with the book, he's continued to have an obligation to completely and accurately record the discharges. Where do you get that? We get that from subsection A of the regulation, which places the ongoing maintenance duty on the ship as a whole. The ship, but not on him individually. And subsection H then fleshes out that duty by saying the person in charge of the operations concerned has a duty to sign each and every entry that's in that book, and the reason for the signature— When it occurs. But the reason for the signature is so that later, when the Coast Guard actually inspects the book, they know who is responsible for each entry. So that obligation to sign an accurate entry— That doesn't answer the question before us as I see it, and that's whether a crime has been committed by this particular defendant on the basis of the charges made against him. And as I understand the appeal, the charges were essentially—the charge at issue here was a failure to maintain an accurate oil record book under section 1908. And the question is whether he had that responsibility or not. If he didn't have that responsibility under the statute or under the regulation, then he didn't violate the law. Is that correct? And you are arguing that he did have a violation, that he did have an obligation, because the ship had an obligation. But the ship wasn't indicted. He was indicted. Where is his responsibility? And because he is the person who— Because he's on the ship? No, because he is the person who is required to sign each entry to certify its accuracy. If that's not what Joe says, why would Joe have had even a footnote in there about aiding and abetting? Well, what Joe said was that it didn't need to reach that question. No, it said we don't need to reach it because he was charged under 18 U.S.C. section 2 for aiding and abetting. And so the issue was subsumed by the words of the indictment, whereas here you don't have 18 section 2. That's right. And so this court didn't reach the question that's presented to this court, which is— Well, maybe we'll answer it here. I mean, had you charged 18 U.S.C. section 2, I would agree we would be controlled by Joe. So then— But the language of the reg says the master of the vessel has to maintain it. And Joe is solely based on failure to maintain. It is not based on failure to record. There's a couple of points here. One has to do with the aiding and abetting issue that you've raised. And then the other has to do with exactly what does the term maintenance mean. And so let me kind of separate those out for one second, if I may. The government does not usually charge an aiding and abetting on the face of the indictment. That's not the way the government usually brings these cases. This indictment is representative of the way the government has been bringing these cases for decades. And the fact is that when we charged this indictment, the defendant's attorneys and the defendant knew that we were charging him as the person in charge of the operations, that he had a duty to maintain the book in that circumstance. And yet, for some reason, waited until after jeopardy had attached to raise this, essentially, argument that the indictment fails to state an offense. And so our position here is that this court's review is for plain error because there's been no good cause showing for waiting. Now, had the defendant at the outset of the case said, wait a minute, we don't think you've charged this correctly because I'm not the person with the legal duty to maintain this offense, then our prosecutor might have at that point amended the indictment to include an aiding and abetting charge. But because of the way this issue was raised. Who are they aiding and abetting if nobody else is named in the defendant? Are they aiding and abetting the commission of the crime? But who are they aiding and abetting? Usually aiding and abetting is there are other people that are involved in the crime. So if the legal theory that we were supposed to present here was that we disagree with this interpretation of our regulations. But let me just say that if the legal theory is that the master is the only person who has the duty to maintain accurately those entries once the book is brought into the United States, our prosecutor could have amended the indictment to include that theory expressly on its face but was deprived. That's really too bad because, you know, in criminal law we sort of reverse the presumption about these things and you're not guilty of something that you weren't indicted for just because the government might have indicted you differently. I can't believe you. That would cover a lot of mistakes. I made a mistake, but if I had not made a mistake, I could have convicted him and so you should uphold this conviction? No, again. Which he was improperly indicted. We do not think that there was a mistake made. But there's usually an opportunity if there's a technical deficiency with the indictment of some sort, there's an opportunity for the prosecutor to amend the indictment to do that. But Rule 12, and that is precisely why Rule 12 says that you can't wait until after jeopardy is attached to bring this type of argument. It's just like if the government charges a bank offense and then they don't prove it's a national bank and then, you know, they've screwed up, the conviction fails. But just wait a second here. Rather than repeat yourself again, I was party to a decision within the last year where we held that certain offenses could not be charged against the managers of drilling on the Transocean Deepwater Horizon, because our panel held the language of the old ship negligence, Ship Manslaughter Act, did not cover these people in this capacity because it only referred to the master, the engineer, and specific vessel-related people. So why shouldn't we apply the same approach here that master means master or person in charge? Thank you, Your Honor, because that's the next point that I'd like to turn to. Okay. I think that there's a misimpression that subsection J is assigning this exclusive maintenance duty to the master or other person in charge of the ship and that somehow that the term maintenance in subsection J is the inference that the defendant is trying to create is that that exclusively assigns the accuracy of the entries to the master. But we've pointed to multiple textual signals showing why that is not the case. Okay. First, the signatures required by subsection H. Okay. The fact that the Coast Guard requires the person in charge of the operations to sign each and every entry signals that person's responsibility for the accuracy of those entries. And as we've pointed out, subsection H is really about, in the plainest terms I can possibly state it, subsection H is simply saying the matter. Does this matter whether it's a civil action or a criminal action? You've charged a man with a crime, and now you're trying to clarify something that has been obfuscated, and he stands convicted on your interpretation of a statute where you're adding all kinds of language? I mean, what about the rule of leniency? Right. Reconstruction of crime, a criminal charge. I have a couple of points on that question, Your Honor. The first is that, as this court and the Supreme Court has said, the rule of leniency comes into play when there's a grievous ambiguity on the face of the statute, which the court can only guess what the meaning of the regulation or statute means. That's all the more true whenever the regulation is exactly clear, and you're trying to give it a distorted meaning, or at least that's my view of it here. The master or other person in charge of the ship required to keep an oil record shall be responsible for the maintenance of such record, and he's not the master and he's not the other person, and you are charging him with that particular obligation and offense, which the statute does not charge him with. Well, again— That sounds to me like it's at least ambiguous. I would say we disagree with that interpretation. We've tried to provide textual signals in the regulation that show why that's incorrect. On the other hand— That's not the way you interpret criminal statutes. This sends a signal that something out there floating in the air may be a crime. If I may also point out, one of the central reasons for the rule of lenity is notice, and as we've made absolutely clear here, the defendant knew that this is how the Coast Guard interprets and applies its regulations. If I may read from the record the testimony that he provided— He knew what you meant. We couldn't articulate what we meant, but he knew what we meant. If I may read—this is a record on Appeal 2353 with your indulgence. Our prosecutor asked the defendant, so you know it's very, very important for that book to be accurate, and his answer was yes, and we all know about that and make a special note about it. And then the next question is, you are also aware that chief engineers have been prosecuted for knowingly falsifying this book, and his answer was, of course I know it. Okay, this is how the Coast Guard has done business for the past multiple decades. He knew that it was wrong to falsify the book, right? He knew that the Coast Guard prosecutes chief engineers for falsifying the oil record book because they have a continuing obligation to ensure the accuracy of those entries in the United States waters. That's what the regulation says. He may have misunderstood his obligations. I don't know. This says nothing about— He doesn't have the obligation to maintain the book. Maintain, and that's a subsection. H is maintain, and J is—or vice versa. H is failure to record, and J is—whatever it is, one is they are different terms, and they signify different actions, and the failure to record is clearly connected with the officer in charge of that operation, which is this defendant. The failure to maintain is that of the master or person in charge of the vessel. So that's a pretty strong textual signal from a criminal standpoint that the two are different. The term maintain on its face can have different meanings, right? The term maintain can mean to keep something in good repair. You're making the crime you charged him with vaguer and vaguer. It could have different meanings. The term maintain may also mean to continue having or doing something. Those are the plain meanings of the term maintain, and if you look at subsections I and J and K and read those subsections as a whole, it's clear that what the Coast Guard is doing—and I'm trying to state this in the plainest terms I can in order to try to make the common sense basis of subsection J apparent. What it's doing is it's saying the buck stops with the master, right? It's placing the ultimate responsibility for keeping this book and ensuring its accuracy as well as keeping it physically safe. It's making sure that the master is responsible. But that doesn't exclude the person in charge of the operation's continuing duty to ensure the accuracy of those entries. Why wouldn't you indict the master? You know, because the person in charge of the operations, the chief engineer, is really the person who knows what's going on in the engine room. This is the person who is usually the one who is giving the orders to discharge—to bypass the oil filtration equipment. Judge Mills just asked you. The statute makes it plain that the master has the duty, continuing duty, to maintain the records, and if you are continuing that the record was not maintained, why didn't you indict him? Well, again, because the evidence here showed that it was the chief engineer who took extensive actions to try— It wasn't the chief engineer. —gave the discharge—who ordered the discharge and took extensive— Are you telling me the master doesn't know about that? I mean, these giant cargo ships—well, just—I may be wrong, but these giant cargo ships only have about 30 crew members nowadays. The master, in fact, did not know about it because of the extensive efforts of this chief engineer to cover up his actions. He lied to the master and instructed— Somebody obviously knew about it and blew the whistle, right? It was one of the chief engineer's employees in the engine room. So maybe what a master ought to do in regard to his criminal duty is call everybody up on deck or to the cockpit or whatever you call it before they enter U.S. waters and say, you know, you're going to be dumped overboard unless you tell me right now that this log is in order. You know, Your Honors, I can see—I may not be able to convince you here this morning of the correctness of the government's position in this case. We stand by the regulation and feel strongly that under the circumstances of this case, it simply cannot be concluded that this district judge plainly erred in upholding this conviction in response to this untimely motion to dismiss the indictment for failure to state an offense. Is it not also correct that in any case—in many cases where you say that the engineer violated this provision, the engineer would have also violated the obstruction of justice and, you know, the other provision you charged him with here? You know, it's possible. I think that these charges do—I think it is correct to say that in many cases where we charge oil record book violations, there may also be obstruction of justice or witness tampering type charges like those that were upheld here, and that is true. But what is also true is that this is the consistent way that the Coast Guard has been prosecuting these offenses, again, for decades, and everyone knows that chief engineers are held accountable for the accuracy of these entries when the book is brought into United States territory. I mean, how long would it take them to add this to the regulations, 60 days? Correct? I'm not sure exactly how long it would take, but it certainly is correct that the Coast Guard could amend the regulation to state what your honors— if your honors conclude that the regulation is not clear enough in order to uphold this conviction, then it is possible for the Coast Guard to amend it. Well, the only thing here is that, you know, you're costing a man his livelihood, and I'm not saying that he didn't do what he was charged with doing, but that's a very severe sanction, and, you know, it ought to be stipulated specifically. We think that concern, again, is addressed by the fact that this defendant testified that he knew that the regulations required him to do this. Well, the master of the ship should have been indicted, too, and you ought to take him off the high seas altogether. It's simply a fiction that was created by the defense lawyer after the fact to say that he didn't know that this is how the Coast Guard applies its regulation. I mean, I'm looking at the statute. I mean, I agree. I mean, the man did something that obviously was a serious crime on international waters, and I can understand the Coast Guard wanted to get him and wanted to make him punish him for that particular crime, but it occurred on international waters and not in the United States waters, and you tried to get a conviction on him based on the statute. That's not applicable to his responsibilities. Well, again, Your Honors, we would encourage you to take another look at the arguments we put in our brief to explain why that's not correct and uphold the conviction here. Well, you certainly made a good effort. Thank you very much. Your Honor, just very briefly, if I may. Yes, indeed. The attempt of persuading the panel that this is the way the Coast Guard does business and we should somehow sprinkle holy water on it because it's never been challenged before doesn't pass the red face test. This issue has come up in one other case, U.S. v. Milonakis from April of 2010 in the Southern District of Texas. The case proceeded to trial before Judge Ken Hoyt. After about two weeks of jury presentation, the jury deliberated for a day or so and acquitted the chief engineer of all five felony counts against him. So this precise issue has never come up in any other cases, and the government comes here and says, well, other chief engineers have pled guilty. Really? We're talking about foreign individuals that have been detained for 12, 15, 18 months with limited means, have been away from their families not just for that period but how many months before that they were serving on the high seas, and the government offers them a slap on the wrist, probationary sentences. If you say I'm guilty, you can go home. That's not justice. That's not what this court is here for. We're here to look at what the law requires and hold the government to its obligations to properly charge crimes and properly do their job, not just say, well, it was good enough, this is a bad man, so let's convict him. That's just not right. Your Honors, this man is a foreign seafarer, and seafarers are long recognized by this court and every other court in the United States as wardens of the court. But he did do a bad thing. He did do a criminal thing. Yes, Your Honor. You could have located it in waters other than the United States waters. Yes, Your Honor, and he's accepted. He's accepted responsibly, and that's why we have not appealed the other aspects of his conviction. Okay, well, thank you very much, Mr. Chalice. Thank you. We call the next case of the day, and that's